kaw

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RITCHIE MOORE BEY,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**DOUGLAS COUNTY** )<br>**CORRECTIONAL FACILITY,** )<br>**DAVID DILLON and MIKE CARON,** )<br>)<br>**Defendants.** )<br>) | Case No. 08-3036-JAR |

## MEMORANDUM AND ORDER

Plaintiff Ritchie Moore Bey brought this action under the First Amendment, Eighth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), claiming that defendants Douglas County Correctional Facility ("DCCF"), David Dillon and Mike Caron violated his free exercise rights by not providing him with a Kosher diet. Before the Court is defendants' Motion for Summary Judgment (Doc. 69). The Court has reviewed the parties' briefs and is ready to rule. For the reasons detailed below, defendants' motion is granted.

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A fact is only material under this standard if a dispute over it would affect the outcome

---

[1] Fed. R. Civ. P. 56(c).

of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.

## II. Uncontroverted Facts

Ascertaining the uncontroverted facts in this case has been an arduous task because

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

[3] *Id.*

[4] *Id.* at 251-52, 106 S. Ct. at 2512.

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2548)).

[7] *Id.*

[8] *Id.*

plaintiff has failed to abide by Federal Rule of Civil Procedure 56, as well as the Court's local rule, D. Kan. R. 56.1. The local rule requires that the response to a motion for summary judgment "begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists."[9] In addition, if the party opposing summary judgment relies on any additional fact not stated in the movant's statement of facts, the rule requires that "that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record . . . ."[10] Though plaintiff has neither submitted a concise statement of material facts in issue, nor stated any additional facts, as required,[11] he has recited his Complaint,[12] and has tried to controvert the facts with some reference to the record.

The Court is mindful that a *pro se* litigant's pleadings are to be liberally construed and are held to a less stringent standard.[13] "Courts must take added precautions before ruling on a motion for summary judgment when a *pro se* litigant is involved . . . especially when enforcing these [technical] requirements might result in a loss of the opportunity to prosecute or defend a

---

[9]D. Kan. R. 56.1.

[10]*Id.*

[11]D. Kan. R. 56.1(b).

[12]The Complaint, which recites the roles of each party in the case as well as allegations underlying plaintiff's claims, is insufficient to fulfill this requirement. The reason that a moving party is required to recite uncontroverted facts, with reference to the record, is so the parties and the Court may discern exactly which facts are at issue and which facts are uncontroverted. The numbered paragraphs that should be set forth in plaintiff's memorandum are supposed to provide a basis for the nonmoving party (i.e. defendants) to respond by identifying which of those facts are controverted and which facts are uncontroverted. Under the federal and local rules, all facts identified by the parties should contain a reference to the portions of the record that support the factual contentions. Under the rule, the parties may refer to pleadings, affidavits, deposition testimony, answers to interrogatories, or admissions in support of their factual contentions. Fed. R. Civ. P. 56.

[13]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

lawsuit on the merits."[14]  Nevertheless, the Court is not authorized to become the advocate for the *pro se* litigant.[15]  "Despite the liberal construction afforded *pro se* pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[16]  Moreover, plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se.*[17]  *Pro se* litigants must follow rules of procedure, including local rules.[18]  Though plaintiff has failed to follow the very important rules governing summary judgment, Fed. R. Civ. Pro. 56 and D. Kan. R. 56.1, there is some hint that plaintiff has controverted defendants' statements of fact.

The uncontroverted facts are as follows.  Plaintiff was incarcerated in the Lansing Correctional Facility in July 2007 and later moved to DCCF in January 2008.  Upon arriving at DCCF, plaintiff requested a Kosher diet in a grievance filed January 16, 2008.  Plaintiff explained that he was a member of the Moorish Scientific Temple of America and that he required a Kosher diet in observance of his faith.  That same day, DCCF responded and informed plaintiff that DCCF was a "no pork" institution and offered him a vegetarian diet.  DCCF officials additionally requested information regarding plaintiff's faith and religious beliefs.

After receiving additional information, DCCF officials spoke with senior leaders of the Moorish Scientific Temple of America to further understand the religion.  DCCF officials

---

[14] *Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994).

[15] *Id.*

[16] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[17] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994), *cert. denied*, 513 U.S. 1090 (1995).

[18] *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992), *cert. denied*, 507 U.S. 940; *Campbell v. Meredith Corp.*, 260 F. Supp. 2d 1087, 1097 n.10 (D. Kan. 2003).

consulted with the chaplain and food service director where plaintiff was previously incarcerated, researched available literature on plaintiff's religion and claims for a Kosher diet, and repeatedly asked plaintiff for the religious tenet requiring a Kosher diet.  After some research, DCCF officials concluded that plaintiff's religious beliefs did not require a Kosher diet.  Despite the investigation and ultimate conclusion, DCCF officials met with plaintiff on January 18, 2008, and agreed to provide plaintiff with certain items requested in accordance with his faith.

On January 25, 2008, plaintiff began receiving pre-packaged "Kosher meals," yet filed this action four days later.  The pre-packaged Kosher meals instruct the preparer to vent the package prior to placing it in the microwave.  According to plaintiff's food chart, he received either a vegetarian diet or Kosher meals until he first refused the diet on February 24, 2008.  In fact, plaintiff's food chart maps each day's breakfast, lunch, and dinner, and shows what foods were eaten or returned by plaintiff up to April 8, 2008.  On each day, plaintiff was either offered a vegetarian or Kosher diet.  Even though plaintiff was receiving Kosher meals that he accepted, on February 4, 2008, plaintiff requested that officials at DCCF inform him of what diet they had assigned to him, because he was then receiving pre-packaged "Kosher meals."  On February 6, 2008, plaintiff filed another grievance, this time claiming that the pre-packaged meals were not Kosher because they were prepared in the same DCCF kitchen where non-Kosher food was prepared, and because they arrived with holes (vents) in the package.

Kim Massey responded to plaintiff's inquiry and asked what DCCF could do to make plaintiff's pre-packaged meals Kosher, since he claimed the method of packaging the foods made it not Kosher.  Plaintiff responded on February 10, 2008, that his meals should not be

thrown together in the same kitchen as the non-Kosher meals, and again on February 11, 2008, directing DCCF officials to a company in Illinois that provided pre-packaged Kosher meals. Massey responded that because DCCF was under a current contract with a food provider, it would not be able to obtain food from the Illinois company. Again, on February 20, 2008, Massey responded to another request, which provided DCCF officials with religious material showing that plaintiff's diets should be Kosher. In response, Massey explained that under her view, the religious materials only applied to meats, not the vegetables that plaintiff was served.

On April 2, 2008, plaintiff again sent another inmate request form, this time stating that he has not been receiving Kosher meals. Massey stated that DCCF was in the process of purchasing new instruments to be used only in the preparation of Kosher meals. Eventually plaintiff filed a motion for a preliminary injunction, stating that he was not given Kosher meals, and that the pre-packaged meals were delivered to him with holes in the packaging. After the new microwave and cutting board were purchased, DCCF hired a Rabbi to oversee and comment on the preparation of Kosher meals. Rabbbi Zalman Teichtel inspected the kitchen and procedures on April 11, 2008, and concluded that DCCF was in accordance when preparing the pre-packaged Kosher meals. According to plaintiff's weight chart, he had lost over thirty pounds by April 11, 2008, dropping from 253 pounds to 220.

### III. Discussion

The defendants claim that they are entitled to qualified immunity, arguing that plaintiff cannot show a constitutional violation. The defense of qualified immunity shields governmental officials from liability for actions taken within the official's discretionary authority.[19]

---

[19] *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992).

"[Q]ualified immunity is designed not only to shield public officials from liability, but also to ensure that erroneous suits do not even go to trial."[20]  On summary judgment, special rules apply when an official raises a qualified immunity defense.  A "plaintiff must show 'that the public official's alleged conduct violated the law,'" and "that the law was clearly established when the alleged violation occurred."[21]  If plaintiff can make that showing, then the usual summary judgment burden is applicable and the movant will be entitled to judgment as a matter of law if there are no genuine issues of material fact.[22]  In other words, "liability may not be imposed unless [the public official's] conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[23]  To determine whether both parties have carried their burden, the court views the evidence in the non-movant's favor

### A.   First Amendment and RLUIPA Claim

Plaintiff's claim stems from the First Amendment and RLUIPA.  He claims that DCCF officials violated his constitutional and statutory rights under RLUIPA by not providing him with a Kosher diet.  Addressing plaintiff's First Amendment claim, it is well-settled that inmates retain protections afforded by the First Amendment, including the free exercise of religion.[24]  Nonetheless, inmates are still subject to the "'necessary withdrawal or limitation of many

---

[20]*Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 780 (10th Cir. 1993).

[21]*Id.* (quoting *Pueblo Neighborhoods Health Ctrs. v. Lasavio*, 847 F.2d 642, 646 (10th Cir. 1988)).

[22]*Id.*

[23]*Jantz*, 976 F.2d at 627.

[24]*Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

privileges and rights, a retraction justified by the considerations underlying our penal system.'"[25] Thus, under the First Amendment, the Supreme Court has stated that a prison regulation that impinges on a prisoner's free exercise rights is valid if it is reasonably related to a legitimate penological interest.[26]

To preclude summary judgment on his free exercise claim, plaintiff must pass a two-step inquiry. First, plaintiff must show that some prison regulation substantially burdened his sincerely-held religious beliefs.[27] If plaintiff can make this showing, the burden shifts to the institution to show some penological interest that justifies the impinging conduct.[28] Thereafter, the burden returns to the plaintiff to show that the articulated reason for the regulation is irrational.[29]

According to plaintiff's meal chart, he was provided a Kosher diet beginning on January 25, just nine days after he requested such. During that nine-day period, defendants investigated the legitimacy of plaintiff's contention that his religious practices required such a diet. And, in that nine-day period, defendants advised plaintiff that DCCF was a no-pork facility, and he was offered a vegetarian diet. Here, plaintiff cannot muster any evidence to suggest that there was a substantial burden on his religious practices. The Tenth Circuit defines substantial burden as "one that: (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2)

---

[25]*Id*. (quoting *O'Lone*, 482 U.S. at 348).

[26]*Id*. (citing *O'Lone*, 482 U.S. at 349).

[27]*Anderson v. Bratton*, No. 07-3017-JAR, 2008 WL 732941, at *3 (D. Kan. Mar. 18, 2008) (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).

[28]*Wares v. Simmons*, 524 F. Supp. 2d 1313, 1319 (D. Kan. 2007).

[29]*Id*. (citing *Kay*, 500 F.3d at 1219, n.2).

meaningfully curtails plaintiff's ability to express adherence to his faith, or (3) denies plaintiff reasonable opportunity to engage in fundamental religious activities."[30]  In this Court's view, the nine-day period before plaintiff received the pre-packaged Kosher meals, was merely "a de minimus level of imposition with which the Constitution is not concerned."[31]  Defendants direct the Court to a number of cases holding that a short delay in processing requests in a prison setting does not lead to violations of the Constitution.  For example, in *Davidson v. Murray*, the court found that a ten-day delay in processing plaintiff's food request was "'typical and acceptable institutional delay which does not implicate the Free Exercise Clause.'"[32]  Similarly, in *Holiday v. Guisto*[33] and *Stewart v. Wright*,[34] the courts concluded that a short delay in processing and evaluating food requests did not violate the Free Exercise Clause.

Even if the Court found that plaintiff was not provided a Kosher diet until April,[35] when a new microwave and cutting board were purchased to further accommodate plaintiff, the Court would nonetheless find that the delay did not rise to a substantial burden.[36]  Viewing these facts in the light most favorable to the plaintiff and drawing all reasonable inferences in his favor, no

---

[30]*See Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

[31]*Id*.

[32]No. 92-CV-0283C, 2005 WL 1123756, at * 4 (W.D.N.Y. May 10, 2006).

[33]No. Civ. 03-01385-AS, 2004 WL 1792466, at *5 (D. Or. Aug. 10, 2004).

[34]No. 96-1486, 1996 WL 665978, at *1 (7th Cir. Nov. 13, 1996).

[35]The Court notes that plaintiff's food chart shows that plaintiff was provided with Kosher meals beginning January 25, 2008.  Because of plaintiff's continued complaints that the pre-packaged meals had "holes" (vents) in the package and were prepared in a kitchen with non-Kosher foods, defendants further accommodated plaintiff in April, purchasing a separate microwave and cutting board for preparation of plaintiff's food.

[36]*See Tapp v. Stanley*, No. 04-6400, 2008 WL 4934592, at * 8 (W.D.N.Y. November 17, 2008) (finding that a 77 day delay in providing a Kosher diet served legitimate penological concerns).

reasonable juror could conclude that plaintiff's First Amendment Rights were violated.

The same is true under RLUIPA, for under RLUIPA, "'no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the government shows that the burden furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'"[37] Here, there was a nine-day delay in providing plaintiff with a Kosher diet, during which time, he was offered a vegetarian diet, which was prepared in a no-pork institution. There is no evidence before the Court that DCCF refused to provide plaintiff with a Kosher diet. Rather the evidence tends to show that plaintiff was provided with a Kosher diet soon after making his request. Accordingly, plaintiff's RLUIPA claim also fails.[38]

### B.  Eighth Amendment Claim

Plaintiff also claims that DCCF officials violated his Eighth Amendment right by not providing him with a Kosher diet. "Prison officials must ensure that 'inmates receive the basic necessities of [nutritionally] adequate food.'"[39] A substantial deprivation of food may rise to violation of the Eighth Amendment where prison officials acted with deliberate indifference.[40] To hold prison officials liable for violation of an inmate's humane conditions, plaintiff must be

---

[37]*Kay v. Bemis*, 500 F.3d 1214, 1221 (10th Cir. 2007).

[38]Apparently, plaintiff maintains that his pre-packaged Kosher meals came with holes in the packages and that his Kosher meals were prepared in a non-Kosher environment. Again, this does not meet the substantial burden test. What plaintiff complains about is the venting of his pre-packaged Kosher meals prior ro placing them in the microwave, as directed by the manufacturer. In any event, a Rabbi oversaw the procedures and concluded that venting the package before placing it in microwave does not render the food non-Kosher.

[39]*Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)).

[40]*Id.*

able to show that the deprivation alleged was objectively sufficiently serious, in that it deprived him of the minimal civilized measure of life's necessities, and the official must have acted with deliberate indifference to a substantial risk of serious harm to plaintiff.[41]

Here, plaintiff has made no showing that the food provided was not nutritionally adequate; in fact, plaintiff cannot show that DCCF officials denied him a Kosher diet. The uncontroverted facts establish that plaintiff was given a Kosher diet soon after making his request. During the processing period, plaintiff was offered a vegetarian diet. Additionally, plaintiff cannot show deliberate indifference. Plaintiff has not controverted the fact that he was given a Kosher diet, that a Rabbi was called in to assess the food prepared for plaintiff, and that plaintiff was given pre-packaged Kosher meals. Plaintiff cannot muster any evidence to suggest that the food offered him was not nutritionally adequate nor that he was deprived of food pending approval of his Kosher diet. What is apparent from the evidence is that plaintiff lost a substantial amount of weight, but not because he did not receive an adequately nutritional diet, but because he refused to accept Kosher meals when the packages were vented. Accordingly, summary judgment is warranted on plaintiff's Eighth Amendment claim.

Plaintiff having failed to show either a First Amendment or Eighth Amendment violation entitles the defendants to qualified immunity.

**IT IS THEREFORE ORDERED THAT** defendants' Motion for Summary Judgment (Doc. 69) is granted.

Dated: January 27, 2009              S/ Julie A. Robinson
                                     JULIE A. ROBINSON
                                     UNITED STATES DISTRICT JUDGE

---

[41] *Barney*, 143 F.3d at 1310.